Good morning, Your Honors. May it please the Court, I'd like to reserve three minutes for rebuttal. The Court has asked the parties to address whether the Governor's recent decision affirming the Governor's grant of parole, the Board's grant of parole, excuse me, renders this case moot, and if not, what remedy would Mr. Pearson be entitled to? Because the mootness issue depends on the remedy, I'll address the remedy issue first. Mr. Pearson claims that the case is not moot because he is entitled to a reduction in his parole term. As an initial matter, I Mr. Pearson has waived that claim. He did not object to the magistrate's recommendation to simply grant Mr. Pearson's release, and nor did he file a cross-appeal of the remedy in this Court. I'm confused. I'm sorry? What was the magistrate's? The magistrate's recommendation was simply released to parole, and he did not object to that in the objections to the report and recommendation, nor did he file a cross-appeal. But he did very specifically in his original petition ask for either for credit for the parole. Yes, he did. And the district court did not grant that, and he didn't take any action to seek review of that. But regardless of that, I'd like to address the merits of that as well. And the important issue here is that Mr. Pearson is subject to parole for his lifetime. As the recent decision from this Court, Hager v. Curry, says, the Court must look to the scope of the interest created by the State, and in this case, the California Penal Code and the California case law that interprets that penal code clearly establishes that the lifetime parole period is mandatory, that it begins when the inmate is actually released from prison, and cannot be reduced for the time spent in prison. Is that why McQuillan doesn't matter anymore? In part, yes. And McQuillan is distinguishable because in that case, the inmate was serving a determinate parole term. Right. And I guess that's my point. Right. You made a point that Mr. Pearson has a life term of parole, and 3000.1 of the Penal Code covers that issue, the first and second degree murder. Right. Whereas McQuillan and some of the others cited, Bush cited by Chaudhry and so on, dealt with a determinate sentence. Is that correct? That's correct. Okay. But my understanding is that Pearson is somewhat recognizing that at this point and is asking for credit towards a five-year automatic period rather than for release. Right. He is asking for that. But the Penal Code section 3000.1 and the California case law interpreting that preclude that. The Court specifically says that it starts when the inmate is released. I'm confused also. You say he has a life parole? He doesn't have a five-year minimum parole? He has a life parole. When an inmate is serving life parole, the Penal Code provides that he is eligible for discharge from parole after five years from release, from confinement, unless the board But the issue then is whether he gets credit toward the five years. The five-year review process, yes, towards this discharge eligibility. Okay. And the board maintains discretion then to retain him on parole if they find good ways to do so. All right. So it's not automatic, but he says that he should be eligible for parole five years after he should have been out on parole, and the state's position is, no, the time doesn't start to run for the five years until he's actually released, even if he's held improperly for 10, 15 years. That's correct. Under the Penal Code section, yes. And People v. Moser is a California Supreme Court case. It is not cited in the briefs. I apologize for that, but it is located at 6 Cal 4342. It's a 1993 case from the California Supreme Court, where it explicitly says that the defendant must earn the right to reduce his lifetime parole, and he cannot earn that while he's in prison. And these cases support the legislative interest. Is that a case where he should have been out earlier than he was? No, it's not in the parole context. N. Ray Choudhury is in the precise context here. And this interpretation is consistent with the legislative intent. This is not just a public safety issue that the legislature was concerned about. It is also that transition period for life inmates, for murderers in particular, who serve the longer sentences. The legislature has determined that they need that time in transition both for their own rehabilitation, reintegration into society, and for public safety. Is there any limitation on this, though? Judge Reinhart mentioned 10 years, 15 years, something like that. I mean, certainly where you're dealing with murder convictions, we have instances where people have been litigating for 30 years plus. Under Choudhury, there's no mention of a cap. It just says that 3,000.1 means X, so five years doesn't start until a person has been released. But as a matter of defining the liberty interest, are we at liberty as a federal court in construing the way the state's liberty interest is applied in this case to cabinet to some maximum term or something, or are we stuck by Choudhury's determination? Your Honor, I'd say, to use your words, you're stuck by Choudhury's interpretation. And there are a couple of reasons for that. One is Mr. Pearson and life inmates are serving life sentences. Right. The validity of those sentences are not at issue in the courts in this litigation. I understand. But understand my focus here. What I'm talking about is let's assume that on, you know, January 1 of 2010, Mr. Pearson, and I'm sticking out of the air on this, is told by the parole board that he's going to be released on that day. Before that time, he's supposed to be released. And there's litigation. And the litigation goes on for five years and 10 years and 15 years and 20 years. And my question is, unlike the original parole term, which is clearly what the statute provides, is there some limitation on how long somebody who, according to the parole board, should have been released in my illustration January 1, 2010, can be held under the Choudhury doctrine without just going too far? There's no authority that there is a time where it goes too far. Do we have authority as a federal appellate court to fill it in? Now, maybe we don't here because we don't have that situation yet. But at some point, does our court, some court in the federal system, have the right, even in light of what Choudhury says, to say, wait a minute, this just goes too far? My answer would be no, Your Honor. A long line of Supreme Court cases say that federal courts should not intrude on the state's administration of their criminal justice system and the parole system. And to do that, to find a- It's not really very much of an intrusion because, I mean, it wouldn't be, because all it would do essentially would be to switch the burden. And the parole board would still have the authority to keep them on parole, right? They would with a showing of good cause. And that subject would be subject to challenge as well. So the opposite conclusion is that even without good cause, he has to stay on parole even though he was in prison for many, many more years than he should have been. But again, well, whether he's been in prison more than he should have been is certainly debatable, but- Well, it's not debatable if we decide that he's been in prison for many years more than he should have been. Everybody else seems to think that. But the parole board thinks that. I'd also like to point out that in Mr. Pearson's recent case in the California Court of Appeal, challenging a 2006 decision of the governor, which also, like this case, was a pre-Lawrence decision by the governor, the Court of Appeal there remanded it back to the governor to reconsider. They did not order release, nor has any California court ever- No California court has ever ordered that as a remedy for a life inmate serving a time, even if a governor's decision is found to have violated his due process rights. What about the aspect of what the California Supreme Court would do with Chaudry? It's my understanding it's not going to review that at this point. But do we have authority under the case law to, as it were, put our minds into the minds of the California Supreme Court and say, you know, this court, looking at Chaudry, is going to say, this is too much. We're going to overturn this. Do we have that authority, and if so, on what basis? To ask the Supreme Court to consider it? No, no, no. As I understand the case law, if we believe that the California Supreme Court would reverse Chaudry or distinguish Chaudry, that we have the authority to make that decision independently based upon our analysis of what the California Supreme Court would do. Do you disagree with that? I'm not sure if I agree or disagree. Well, the answer is, are we bound by a Court of Appeals decision to the same extent we would be by a Supreme Court decision? Well, you're certainly bound by the language of the penal code itself. Okay, you know, but the problem is, I didn't say anything about the penal code. I asked you whether we were bound by a Court of Appeals decision to the same extent we are bound by a Supreme Court decision. No, you're not. Okay. But the Supreme Court has addressed this in People v. Moser and said explicitly that light inmates cannot earn credit towards their parole term while they're in prison. And they said that was not a case in which he was held past the time he should have been released. No, but there was an issue there about whether or not he had or would be able to serve that time, and there was an over-I'm not sure it was an over-detention situation, and nor is this. Again, this is he's serving a life sentence with a maximum of life. The California Supreme Court has made that clear. It's over-detention if he should have been granted parole, and the parole board was correct and the governor was incorrect, then it's the time he should have been released in 2003 when the parole board said he should have been released. Well, to bring another case to Your Honor's attention is the In re Lawrence case. In that case, Ms. Lawrence had a very similar situation. The Supreme Court did not order a reduction in her parole term, and in that case, she actually had a determinant term, not a life term. But she was released to parole. But they didn't refer to Section 3000.1, though, did they? No, they did not. But, again, if there's any reason. Many, many. I mean, I haven't seen a number of these cases, and I don't know what was true in Lawrence. This is the first one I've seen in which the petition actually was not a request for release on parole, but for release with credit. So I don't know what was true in Lawrence, but in many other instances, we've denied the remedy because it was never asked for anywhere up the line. And I don't recall whether that was raised in Lawrence. I know because the California courts have not adopted that argument, maybe she did not raise it there. But, again, the Supreme Court certainly could have changed the remedy in that case  At the same time, on one slightly other point, Lawrence did, however, order release on parole and didn't remand to the governor. That's correct. And is it material here? And what is your ultimate position on whether, given Prather, given the fact that this was a governor decision, not a board decision, do we have any responsibility, would we have responsibility if the case weren't moved to remand to the governor? Let me address the Lawrence issue first. Well, that is the Lawrence issue because Lawrence was exactly that situation and it didn't remand to the governor. Right. The court also did not address the remedy. The remedy was not an issue in Lawrence, so we don't know for sure. They did obviously adopt and affirm the release order there. In many pre-Lawrence cases, as we call them, because there are so many that were pending before Lawrence came out, several courts of appeal have remanded, just like the District Court of Appeal here in the state court, remanded it back to the governor to reconsider. The California Supreme Court has not weighed in on that yet. Under Prather, under Haggard, we would suggest that it should still go back to the executive branch, to the governor to reconsider, but there is a split of authority in California about that. The overarching separation of powers. Wait, wait, wait. Let me be sure I understand. You're saying that in this case it would go back to the governor? Not anymore. It's already gone back to the governor. Right. I could say Gomez and McDonald say otherwise. Do they not? I mean, where we have the board saying he should be released and the governor has already been found to have been an error, then we're not dealing with Prather, which is a governor situation, right? Right. Other courts of appeal have found the opposite. In re Capistran and then also in re Ross, they both have said this should go back to the governor. And, again, in an unpublished case in this precise issue, the court of appeal actually found some evidence, but because the governor's decision was issued before Lawrence without the current dangerousness scope in his head, they gave him another shot to look at it. And so our position would be that because this was pre-Lawrence and if the court's applying Lawrence, the governor should have another opportunity to review it, which obviously is moot in this case because the governor has now decided that Mr. Pearson is not a risk to release to the public. Does it matter if we have a change of governor? As far as the remedy? I don't mean what he'd do. I just mean as a matter of law, if the governor who made the, in quotes, mistake is no longer in office, does it make any difference for purposes of our decision? No, Your Honor. The executives, it's sort of, it's a, I'm not sure what the term is. It's the institution, not the person. Is that what you're saying? Yes, thank you. All right, I tried to stop you when you had the three minutes left, but we kept going, so we'll give you the three minutes anyway. Three minutes? For rebuttal. Oh, okay, but I'm done for now? You're more than done for now. I didn't see the line. I apologize. You should be done permanently, but we'll give you the three minutes. Good morning, Your Honors. May it please the Court. I think, Justice Smith, you touched on a general. Judge Smith. Remember, there's no justice in the Ninth Circuit. Excuse me, Judge Smith. I think you touched on a very important point, case as a governor reversal instead of a board reversal. It's somewhat misleading to refer to Crather and Haggard and say that, you know, no one's ever done it, when this is a governor reversal and all of those other cases are board reversals. But none of that matters if, I mean, how does that matter in this case, I guess is the question. Well, it just matters in that their authority is not, is distinguishable. But if the case is moved because you can't get an accrediting remedy. Okay. First of all, you're asking for anything more than an accrediting remedy at this point. Yes. I want to be heard with respect to both the credits. And I also don't think it's – let me start with accrediting remedy. And I have a case that I'd like to direct Your Honors to. There's an unpublished case out of the East District of California, Thompson v. Carey, CIVS051708. That says even if we're going to stick with a state law remedy and we're stuck with 3000.1, if we have a period of overdetention, which we have here at a minimum of six years, that at a minimum, even if they remain on this life parole, they get credit for it. Now, this five-year review that we've talked about, it's not that the person has an opportunity to get paroled in five years. It's that the state has a burden at the five-year point to show a reason. Let me ask you something here. Yes. With all due respect to our district court colleague in Thompson, I think it gets badly off on the point that he's relying on McQuillan and others who don't deal with the life-term parole. We've got a different situation here. How do you deal with the point that was raised a few moments ago about the fact that you've got section 3000.1? It's a pretty plain statute, and Chadri did a creditable job of reading that statute. We have no other California authority that I'm aware of where you have a lifetime parole, somebody who has been released, and the exclusive issue now is whether the person gets credit. Isn't that really what we're here for? Yes, Your Honor. If I may back up a little moment and talk about the federal authority that I believe that exists for this court. The case, and I'm not sure whether or not we cited it. You didn't write anything about this issue, really. I'm sorry. I'm thinking of referring to a brief that was provided, a memo brief. HRDA, which cites Faye, which is a 1963 U.S. Supreme Court case. But doesn't that deal with the situation where you have a determinate sentence as opposed to a lifetime parole? I believe that the holding is much broader than that. Well, I don't care about what. You've got to deal with the facts before you can determine what the holding is. And in that case, as I recall, you had a determinate sentence and determinate parole. Am I mistaken? No, Your Honor. I don't believe you are. But the holding in that case was that the federal court could fashion any remedy that as long as justice requires. Didn't Haggard specifically distinguish that and say they were in error about that? Are you talking about Pirdle or HRDA? I'm talking about Pirdle, which cites the Faye. And you said that was 19-something, right? I believe it's a 1963 case. And it vests a broad jurisdiction in the federal court in a habeas matter to fashion, if you will, a remedy as justice and equity may require. But even looked at that way, it's a little hard. On the one hand, there's an injustice that was done, which is the person wasn't in prison for a lengthy time. But they shouldn't have been. And obviously people get convicted and are in prison for, you know, a very lengthy time when they shouldn't have been there at all. The problem is that it isn't clear why even taking a broad view of what a fair remedy would be, having somebody whose problem is that he didn't get parole when he should have, be treated as if he were on parole when he was on parole, and the two are really not fungible. It's true there's a greater restriction on liberty, but it doesn't give him the supervision in the community and so on. The parole was supposed to be given for a transition period. He never got that. Yeah. His period of impeccably good behavior in prison is distinguishable from monitored behavior outside of prison. However, there should be a remedy for his over-incarceration. Theoretically, there's a remedy, right? A 1983 damages remedy. Well, and McQuillan also draws the court's attention to the fact that whether or not you have this broad-based remedy that you can fashion in a habeas case, once we have established a period of overdetention, we have a federal 14th Amendment issue that clearly gives this court the right to do that. Can I ask you a question here? So he was in longer than he should have been, let's say even more than five years longer. Yes, Your Honor. At the end of five years, he would have been entitled to a hearing, right? Where it would have been the State's burden to show a compelling reason to extend his lifetime parole. Okay. So if you were to prevail here, what you would get would be a hearing before the Parole Board? That would seem to be consistent with State law. And, yes, the burden would be upon him to show a compelling reason under 3000.12. And suppose they said the compelling reason is he hasn't been served five years in parole yet. Well, then we'd have another case. You know, that's the problem with this statute. Plus, how do you deal with Gomez? McDonald would basically say if the Parole Board was correct, then he gets released. How do you integrate that with 3000.1? It's a whole different issue, isn't it? There's an apparent conflict that's unresolved. I would like to draw this Court's attention to the equitable fact that my client was not convicted by a jury. He pled guilty, gave up his right to a jury trial to plead to second-degree murder in a case where he would have been eligible for parole 16 years prior to when he was released. Now, he has spent more than one-third of his life incarcerated in excess of serving the sentence that he expected to serve when he pled guilty. He has a perfect prison record. This is a man who has had a third of his life, spent a third of his life behind bars after serving the sentence which he gave up his rights to agree to take. But you still have to have some legal authority, do you not, to get around 3000.1? The California legislature, in its wisdom or not, made a determination, as Judge Berzon has pointed out, that you need a five-year period after someone has been released to be integrated in the community, see how somebody's going to do, and so on. In this particular case, we've got Chaudry who's interpreted that. We've got our case, Haggard, which is basically follow that. What can we do? What right do we have to revivify this otherwise moot case? The purpose of the five-year review is so that the State can accrue information after the inmates' release to see how he's going to do. But he hasn't been released for five years. That's correct. But we still have some information. We not only have some information because we have another six years of exemplary conduct in prison and we have another six years of reports. But that's not what the statute refers to, is it, counsel? No, Your Honor, it's not. But in order for the State to get the benefit of the statute, the State has to comply with the statute. The State has, in the context of this scheme, of the sentencing scheme, the State has violated my client's most fundamental right. He has spent a large portion of his life, however you measure it, wrongly incarcerated, yet the State wants the complete benefit of the regulatory remedy to make sure that this man is fit. Are you relitigating the original case? Is that what we're doing, a collateral review of the original sentencing and the original case? No. When you say a substantial portion of his life, are you talking about after the time he should have been released or the entire sentence? I think they're both relevant. Certainly these six years is beyond dispute. But, you know, it's very unusual for me to have one of these clients who pled guilty, and it raises another element. When a person pleads guilty, they have an expectation that the law is going to be applied to them. The State failed to apply the law to them. The State dropped the ball on this man, resulting in his severe incarceration for a period that's already been adjudicated to be six years. That the State now wants to further invade his liberty after causing this massive invasion of his liberty, contrary to law, I think it gives this Court a reason to consider granting a remedy under the Fourteenth Amendment. He spent six years in prison when there was no law to support his incarceration. State law did not justify his incarceration. That has been adjudicated. Is being on parole likely to have any effect on his employability, for example? Being on parole can have incredible limitations on a person's ability to rent a home, to be around other people, to associate with other people. Well, this isn't the time when it's very easy to get a job. What Judge Riverson's question was, as I understood it, not a legal question, but a practical question, was the difficulty for anybody to get employment, including a former felon particularly. What is the fact that he is on parole when he shouldn't be? What effect does that have on his getting a job? I think that question needs to be answered in the context of the terms of his parole, which can vary according to what the parole officer determines is appropriate. But they can be very intrusive terms. But he's now walking the streets and he is on parole, and there's data. Yes. Yes. And at a minimum, you know, well, one, I would request that this Court exercise my first request would be that this Court exercise its powers to grant an equitable remedy as justice requires. My second request would be that this Court consider granting a 14th Amendment remedy in light of the established incarceration when there was no law to support it. My client went behind bars voluntarily. He consented to it under a system of laws. He was entitled to release in 2003 under those system of laws. He didn't get out until six years later. That's a 14th Amendment violation. He's entitled to a remedy for that. All right, let me just make clear about the remedy. What you're saying is, if I understand it, that what he's entitled to is a hearing before the Parole Board where you say the burden is on the state to show that he shouldn't be his term of parole shouldn't be terminated. Yes. But we wouldn't terminate his term of parole. We would send him back to the Parole Board, and the Parole Board would make the decision as to whether he should continue to serve on parole or whether they would terminate him. Well, of course, that's certainly something that you can do. I think you can go much farther than that if this Court thinks justice requires. Well, what about, what about Chaudhry? Well, for example, what? Because that was your first answer to my first question, and yet every other time you've talked about it, you've talked about just getting credit.  So what else would you do? He should be discharged from parole. He should get credit for having. Why? Because he has had six years of his life. But suppose the Board of, the Board was to conclude that there was nonetheless good cause for him to stay on parole. That would be inconsistent with the already, that would not necessarily be inconsistent with the already adjudicated fact that he should have been released in 2003. Right. But then that leaves. Well, it's not inconsistent because anybody, anybody who should have been released in 2003 would get a hearing after five years. His parole wouldn't automatically terminate. That's correct. And had that person not committed any violations, not had, and not, had nothing changed, for the worse. And, yes, he has not been tested outside of confinement except for the brief period that he's been out. And I understand that that is different than good behavior and it doesn't show he's  But the parole board might well say, look, he's been such a model prisoner for the last six years that we don't see any reason to make him serve on parole under these circumstances. They might. And they might find some over-the-top reason that is not at all related to any legitimate purpose under State law to extend his parole. And then you'd be back again. That's correct. So in one of, I believe it was in the, the recent case, we have a concurring opinion from Judge Kriegler where he talks about, you know, this would be senseless to send it back to the Governor because we know what he's going to do. But that's a different fact. I understand. But at some point in time, I think the State loses their right to be the decision maker when they have abrogated this man's rights under State law to the extent that he has been over-incarcerated for a period of six years and he has to get here to get out. The parole board hasn't been violated his rights at any point. The parole board felt he ought to be released. Once or twice probably. I think twice. So why wouldn't you get a fair hearing from the parole board? You know, he, interestingly, I believe he was found suitable in 2002 and 2003 and not suitable in 2006 after the Governor reversed the 2002-2003 decisions. It's as if the parole board took a cue from the Governor even though he was suitable in 2002 and 2003. Since the Governor keeps reversing this, now we're going to find him unsuitable even though nothing has changed. Are you sure that in 2006 they found him unsuitable? The 2006. But then there was another one, right? Oh. There was one in which they found him unsuitable. But then there was another one in which they found him suitable after that. Right, right, right. Finally, the one that he's out on now, they did find him suitable, right? That's correct. And the Governor declined review. And I think that the court can also, in light of, you know, my client's plea for a remedy from this court, I think the court can also consider the Governor has found no basis, with the Governor being given the right to review, has found no basis to. But, Mr. Grossman, with great respect, I appreciate your strong advocacy for your client, but much of what you're speaking about deals with a different factual pattern, I believe. Here you've got somebody who has been released. The sole issue before us, as I understand it, is whether or not this case is moot, based upon Chaudry and Haggard. I don't believe that you have responded to that. Why is not that construction of Penal Code Section 3000.1 binding on us, and why does that not render this case moot? It's not binding on you because there have been violations of the Federal Constitution with respect to the Due Process Clause in the 14th Amendment. My client is entitled to a remedy as justice requires. I would suggest, at a minimum, that if the court wants to fashion a remedy in accordance with state law, that the court could require a review without my client having to spend five years out of custody. If it's not state law, if it's not an unreasonable application of Supreme Court law, or the facts have been unreasonably applied. I believe it is unreasonable to further impair my client's liberty after he has already had his liberty impaired unlawfully for a period in excess of the probable period that he would have been on parole. There should be a set of similar cases, conceptually, and I'm wondering if there are, in which there was a habeas grant for, on the merits, i.e., somebody was wrongfully convicted, say, of first-degree murder, or he should have been convicted of second-degree murder, or something like that, and in which there was an overstay of imprisonment, but not that there shouldn't have been any imprisonment, and the same question would arise. If the person didn't get out on parole or not on parole, do you happen to know whether there are any cases like that and how they've been treated? No, and frankly, I'm, you know, this indeterminate parole statute is not the one which most of these cases have been tested under. So it's a bit of a de novo experience for us as well. In that three minutes over, I think your best answer to this missed question was the one he raised, which is we're not bound by chowdhury, or chadry, if we think the California Supreme Court would not agree with it. And if you lose on that, we've probably got a problem. But since we'll certainly consider all the arguments,  Thank you. Thank you. I'd just like to address Judge Berzon's question first about overstay issues in other contexts. And in my research, there have not been any California cases that have granted any type of credit towards a life or role. What about Federal habeas cases, you see? I mean, the argument would be that there – the argument is that ultimately the Federal remedy may not be bound by the State remedy. And so I'm curious to know whether in Federal habeas cases, in which there were overstays, not reversals to zero, but overstays, whether there's been any accounting of the parole issue. Not in my research. Not in the life parole context. I'd also like to just address the premise to I don't quite understand why the life parole context makes any difference. Here the question is when is he entitled to his five-year review? Now, we could go beyond that and say because he's been kept so long, we think that should take care of the parole. And he's behaved so well over that extra 10 or 15 years in prison, we don't think that the parole hearing is appropriate. But otherwise, what it seems to me he's asking for is being credited for six years. Well, at the end of five years, he would have had a hearing. So, I mean, that to me would seem to be the issue. What difference does it make that it's for life or for 15 years? Because – sorry. Yeah. I mean, at the end of five, he's entitled to a hearing. If he was there for six and you say, well, give him a hearing after five. And if the parole board determines that we can't tell enough about him because we only know he was the number one star at prison and we don't know how he'll be on the street, then that'll be another case if they do it. But we don't know what the parole board would say when you tell them, look, you had him for an extra six years. Don't you think it's time you let him go? Maybe the parole board would agree. Maybe it would disagree. I have a slightly different question. It follows up on what Mr. Grossman indicated. Let's assume for purposes of our discussion here that 3000.1 Chadry and Haggard control whether this is moot. But let's assume that on a separate issue, you've got – that's the state-created liberty interest. Then you also have a federal constitution and a federal liberty interest of some type, perhaps yet to be defined, that deals with the issue of somebody that has been held too long based upon the state law. This case, 3000.1 controls. Is Mr. Grossman correct that there is a separate constitutional violation that would occur here even though state law may have been complied with? No. Why is that? Because he doesn't have a liberty interest in any type of credit for over-detention. So you're referring then back to state law. You're saying that as long as the state law, which is the only – under Hayward, the only liberty interest we can look to says it's okay, then there is not any possibility of a separate federally recognized liberty interest that's not encompassed within 3000.1. Right. Well, there's no process due unless there's a liberty interest. And the liberty interest is not a federal liberty interest, so they'd have to look to the federal liberty interest. For Hayward. But it's one that is based on the recognition under state law. Under state-created. And if that's the case, then state law controls what the – Well, I'm not entirely convinced that that goes on forever. I mean, to the remedy stage entirely. I mean, because there is a federal statute governing in very general terms the liberty, the remedy available in habeas, as Perl points out. And to – I understand Hayward did this, but to push the liberty interest analysis into the remedy stage in habeas, and to keep doing that, pushing it further and further down the road, I'm not sure makes – is proper. I understand. But he's also trying to sort of create a new substantive right as far as a remedy. And there is no – there's no state law saying this is the remedy. Is there any state law that says, other than Chaudhry or whatever, that says that the statute applies in this circumstance? Chaudhry and then In re Gomez, which is a recent court of appeal decision, said the same thing, followed Chaudhry. And again, the Supreme Court has said it in a different context about how you – how an inmate may earn credit. Well, was there a petition for review of Pilate and Chaudhry? I'm not sure. I believe so, but I'm not sure. And it's been denied, you think, then? I can supply some briefing. Well, we can look it up. Gomez has just been published there, and that's our case, and we are not seeking review in that. But Chaudhry might have. You're not seeking review because you lost the case? Right. Gomez was a decision finding – a governor's decision had violated due process. So it would be the petitioner that would – or who would seek it as to the remedy issue. Correct. And that time has not passed yet. That's a pretty recent decision. And in that one, as I recall, the parole board was correct, so they reinstated the parole board's decision. Is that correct? That's correct. And was that issue raised, then, about whether – when he becomes eligible for the five-year hearing? Yes. Mr. Gomez had argued, just like Mr. Pearson did, that he's entitled to a reduction of his lifetime parole period. The court of appeal said no. I would just like to address very briefly that – But he got the parole he wanted, right? That's correct. He was released. And nobody's appealing, is it? That's correct. Unless Mr. Gomez is appealing the remedy, and so he may seek review of that. I would just like to address that we're presuming here that there was, as Mr. Grossman says, beyond dispute a violation of Mr. Pearson's rights. That's not the case. The only way to even find any kind of dispute is to apply Lawrence to this case, which was not decided until four years after the Governor decided this. So as we've pointed out in the briefs – But Lawrence was pretty clear. I mean, Lawrence applied to Lawrence, and Lawrence was pretty clear about the fact that it really wasn't changing law. It was just explaining it. But it certainly put different criteria on the courts to look at Governor's decisions. And as the court of appeal did recently with the pre-Lawrence decision in Mr. Pearson's case, gave the Governor an opportunity. In 2004, when the Governor looked at this, Mr. Pearson had just for the first time accepted responsibility for his involvement in the gang, for threatening the witness, for even owning the gun and initiating the gunfight. Under Lawrence and under a plethora of state cases, that would be sufficient to satisfy even the new standard in California. So I absolutely disagree that it is beyond dispute that Mr. Pearson was ever over-detained, was ever violated, his rights were ever violated by the Governor's decision in 2004. Thank you. Thank you, counsel. Thank you both. The case is here. It will be submitted. The court will stand in recess for the day.
judges: Reinhardt, Berzon, Smith M.